Case number 15-5746, USA v. Lindell Luck. Oral arguments not to exceed 15 minutes per side. Mr. Jeffrey B. Lazarus for the defendant appellant. Good morning, your honors. Jeff Lazarus from the Federal Public Defenders on behalf of Mr. Luck. I would like to reserve four minutes for rebuttal, if I may. All right. May it please the court, your honor, in this case, the district court committed a reversible error by failing to accept the defense's request for a stipulation in this case in violation of Evidence Rule 403 and the Supreme Court's holding in Old Chief v. United States. In Old Chief, the Supreme Court relied entirely on Evidence Rule 403 and allowed a stipulation because of the prejudicial effect of a defendant's prior conviction. So Old Chief is a categorical rule, isn't it? It's a categorical rule about whenever you have a prior felony, you're always going to say the Rule 403 balancing leads to too much prejudice, right? The idea is to put in evidence about the prior felony. But I would call that a categorical balancing. In other words, in Old Chief, they said we're doing it this way in all cases. That's correct. Okay. So are you trying to make the same argument here that in all sex offender cases, it's always categorical balancing? Are you saying, no, no, no, this is a case where these images violated 403? Not necessarily these images and not a categorical rule in all cases. However, I didn't know there was any other options. Well, we have to look at the facts in this case. In this case, we have a defendant who does not contest that the images in the case were child pornography. If Mr. Luck was saying that these images did not constitute child pornography under the federal statute, then it would obviously be an issue of fact, and it couldn't be stipulated to if that was his argument. So because he is stipulating or agreeing that the images do constitute child pornography, he's reducing the relevancy and making the rule of Old Chief applicable here. So in all cases where a defendant in your client's shoes does that, will Old Chief require keeping it out? We don't believe so, Your Honor. We're not asking the court to accept that. Okay, so that just means it's a Rule 403 abuse of discretion case. But in looking at 403 and looking at Old Chief, Justice Souter relied on the phrase that there must be a less risky alternative. A less risky alternative in this case, we don't only have the stipulation or the agreement that these images are child pornography, but we also have the file names that were previously read into the record by the agent in trial. So the agent reads the names of the images into the record and tells the jury what they are. And these image names all contain indicators that they are child pornography. They have sexually explicit words, and they refer to children as minors in the names. Because we are allowing that, it is a less risky alternative. So the admission that these are child pornography, coupled with the fact that the image names demonstrate further to the jury, it reduces the probative value of showing the actual images to the jury. But the images themselves have such an emotional response in this case, that it is merely the purpose is to elicit an emotional response, and the probative value of showing the actual images is very low. So when looking at that 403 balancing in this case, not as a general matter in all child pornography cases, but in this case, with all these circumstances, the 403 balancing favors Mr. Luck, and the district court erred under the rulings of Old Chief. This court has twice before... Wait a minute now. Some jurors may not understand what child pornography looks like. Don't they have a right to see what constitutes the offense? Your Honor, in this case, the images themselves speak for themselves in the file names. And in fact, I'm not sure that jurors would want to see child pornography. Well, it might be their duty to see it, whether they want to. They're serving on the jury for the case. They may have a duty to see it, whether they want to or not. They may also have a duty to understand what the defendant's prior conviction is in a gun case. And Old Chief says that's beyond their understanding, that they're not supposed to know what the nature of the prior offense is. Well, a gun is a gun is a gun. They know what a gun is. I mean, but child pornography may be a little different. But in a 922 case, the issue of the gun is separate from the Old Chief standard. The issue in Old Chief is the prior conviction. And whether it's a rape or a murder or a kidnapping or something as low level as a felony theft, the Supreme Court has said we're taking that nature away from the jury. We don't want them to consider what it was because we're afraid that if it is too prejudicial, that it would prejudice the defendant and harm them. And we don't want to do that. Just like in this case, it's child pornography, whether these images are relatively innocuous compared to some or relatively heinous compared to others. Mr. Luck is simply asking, under these circumstances in which we have a less risky alternative, that the jurors need not be concerned with the specific content of these images. If you're right, isn't it true that the worse the child pornography, the more the pictures would be kept out, more likely the pictures would be kept out? In other words, the more egregious the child pornography, the more outrageous it is, the more likely under your test it would be kept out? And doesn't that seem perverse? Well, I think that it could be, but that again goes to the balancing. No, no, that's the problem, right? The worse it is, the more likely the balance favors the defendant. And so I'm just saying it seems very strange to me. The more innocent forms of child pornography are going to get to jurors, it always is going to hurt the defendant for the jurors to be seeing this. I think we have to agree to that. But the worse it is, the more likely it doesn't get in front of the jurors. How strange. But again, we could still present to the jurors the fact that these were pictures versus movies without getting into the content. The government could present a number of images. So there are ways in which the government could present this case as more heinous or more reprehensible without actually showing the movies in a case where the defendant doesn't contest the substance of the child pornography itself. So that government could get around that and they can present their case as they see fit. We're just saying that in a case like this in which the defendant doesn't contest and there is a less risky alternative, that these images are clearly indicative of child pornography. Mr. Lazarus, has any court accepted your argument that Old Chief should be expanded to this context? Yes, Your Honor. The Ninth Circuit has in a case cited in my brief called Marino-Balderrama. I'm not sure if I have it pronunciated right. But it is a Ninth Circuit case from 1998. It's a published opinion. Does the district court in that case do the Rule 403 balancing in favor of the criminal defendant? In other words, did the criminal defendant win a trial? No. He was convicted. No, no. Win a trial on the evidentiary ruling. No, the evidence was admitted and the Ninth Circuit overruled or vacated that finding and ordered a new trial. Abuse of discretion grounds. Yes. Following specifically the dictates of Old Chief and saying that in that case, showing the jurors, because there was a less risky alternative, that the judge erred in not properly conducting the 403 balancing. And I would further add, in that case, the district court did give a cautionary instruction. When showing the images, the district court gave a cautionary instruction, and it's laid out in the opinion detailing that these images are troubling and the jury should consider them just for what they are and not consider the nature of them. So even with that cautionary instruction, the Ninth Circuit still felt that Old Chief was applicable to this context. How about our circuit? Has our circuit viewed Old Chief in that? This court has two published opinions, both cited in my brief. One is a case called Caldwell from 1999, and it's a very short analysis saying we don't extend Old Chief to this context. Is that binding on it? It is an unpublished opinion, so no. The second case was from 2009, in which both Your Honor Judge Griffin and Judge Sutton were on, which is a case I believe called Mellie's, in which the court said, in which Your Honor said that they were following Caldwell and not extending Old Chief. These are unpublished opinions. But I would distinguish those cases factually with this less risky alternative. In the Mellie's case, the defendant had, I think it was, 47 CDs, and there's no indication as to whether they are marked. They are just simple CDs. The jury looking at the CD, there's no specific indicator that child pornography is contained on there. We are offering a less risky alternative with the file names themselves, that the file names show what the CDs do not, that there is a child pornography indicator on those files. Now the government takes the position that, well, these file names can be manipulated, can be changed, and it could be something innocuous, and that the jury should know what is on there. But that defeats the purpose of having a stipulation. By the defense stipulating to the fact that these files are these files, and they're named these files, that's not in contest. So it only furthers the idea that the probative value is already there, that the images have already been proven, and the defense is not contesting this. I'd like to move to my second point, which is keeping out the other 403 analysis, in which the judge did not allow my client's mother to testify about the circumstances that affected him in terms of his cognitive functioning and his mental health issues. The gravamen, as stated by the defense counsel in this case, of this case, is that Mr. Luck may have given an improper confession. He has mental health issues, cognitive issues that stem back to him receiving leukemia treatment from 13 years before, and it left him with severe issues that rendered him susceptible to questioning. The defense's case in chief centered around the idea that while Mr. Luck did give a confession, that it might have been coerced by the agents in this case. You didn't really offer a medical diagnosis about his cognitive problems, did you? You offered medical information about his treatment, but not a medical conclusion from a physician as to the effect of these things on him in terms of his cognitive functioning. Is that true or not true? No, there was no doctor presented, but his mother was going to testify as to the diagnosis he had, which was the acute T cell leukemia. But she doesn't have any medical training, does she? Well, but I think his mother definitely was. Does she have medical training? No, she does not, but it wasn't about what the diagnosis was. It was more the effect that it had on him, and she was going to testify about his treatment and how it affected him physically and mentally and emotionally. This goes to his voluntariness of the confession? Not in terms of a suppression issue, but in terms of the defense's case in chief, centered around the idea that this confession may not have been valid, that he may have been coerced, and it goes to an issue of fact. Isn't that a legal issue for the judge to decide on the motion to suppress whether the confession is legal or not, as opposed to an issue of fact for the jury? It is an issue of fact for the jury as to whether the defendant did properly confess and whether the jury accepts that. Well, whether the jury accepts that as a free product of the defendant's own free will. So that is an issue of fact as to whether, because his statements were such a part of the government's case in chief, whether those statements were actually true and whether they had actually been gotten from the defendant during the course of the interview. You say this is a separate issue from the suppression. You have a Miranda issue and you argue that the Miranda warning should have been given and that also it was involuntary, it was coerced, and the judge ruled against you there. You appeal that. That's correct. But now you're also saying that the jury can second-guess those determinations at trial and basically overrule the judge and say the confession should not have come in? Well, the confession is a constitutional issue as to whether it was proper under the constitutional safeguards and standards. And even if the jurors don't even deal with that issue, if they find as an issue of fact that this was not a proper confession and they reject the statement... What does that mean, not a proper confession? How do you define that? That the defendant was coerced or that his hand was forced, that he didn't mean... Didn't the trial judge make a finding that he was not coerced? That's correct. I wouldn't say overrule. I would say that they could reject the agent's testimony as to that. Just like any other witness, the credibility determinations of the agent are in dispute. And it's something that the jurors... I think we do that all the time with witnesses. Jurors have the ability to judge the credibility of witnesses. And if they feel that the officers were lying or making this up or were too heavy-handed with the defendant and coerced his confession out of them... Are they instructed to do that, that if you find that the defendant was coerced into making a statement, you may disregard his statement? Are there any instructions to them in that regard? There's no instruction to that, but this Court has a pattern instruction about the credibility of witnesses, that the jurors have the duty and the opportunity to assess the credibility and determine whether what the agent's saying is truthful. And if they say that we did not coerce him and the jurors find that to be improper, they can reject that. Thank you, Your Honors. Thank you. May it please the Court, Kevin Ritz for the United States. Is there a DOJ policy on stipulations when it comes to child porn? Or is it just office by office, AUSA by AUSA? How does that work? I'm not aware of any policy, Your Honor. What's the norm? Is the norm to refuse to allow stipulation? I can't speak for every office, but I would imagine it is. Well, your experience. I'm asking your experience. I mean, it's no question it would be to refuse a stipulation, the reason being, as this Court and the Supreme Court and Old Chief has held, we get to prove our case how we want. The defendant does not get to sanitize the case or stipulate the case away. Justice Souter's opinion, I mean, Old Chief is a case we lost, but frankly, Old Chief is a very helpful case for us, and it's chock full of great language about why concrete, tangible evidence is crucial to having the jury do the duty that we are charging the jury to do. And this case, this Court, excuse me, in Melleas and Caldwell has refused to extend that principle, to carve out that very narrow exception for felon in possession cases, to extend that carve out to these types of cases. It shouldn't do so here. Those are both unpublished opinions? They are, Your Honor. I think that might make some sense, Your Honor. This has obviously come up a few times, and I think it is something, in my experience, that has come up in child pornography cases in our district, to some degree. No court has extended Old Chief to this context. We would submit that the Ninth Circuit's Marino-Baltarama case is different for a couple of reasons. First, they were really ruling on whether or not to show these movies in that case to the jury, and there was no proof in that case that the defendant was able to ever see those movies. In fact, the proof tended to show, as I understand it, that he couldn't see these. These were actual films, tangible films like the old films, and he was unable to see those things. And so the Court said, well, if you can't show that he even saw these, then we're not going to let you, or the trial judge should not have let them be shown to the jury. And then secondly, there was also the cover of those films had a picture, an image of child pornography on the box. And so there was this substitute. Regardless, that case is obviously not binding on this Court, but to the degree it has persuasive value, it's distinguishable on those two points. Here, I do want to respond to this point that there's some sort of valid substitute to the evidence. There's not, and this Court in Melleas and Caldwell, there's nothing in those cases to indicate that the format of the child pornography, the images or the videos at issue, is meaningful in any way. And in fact, this case is actually very similar to Melleas. Melleas, there were CDs. There was also a laptop in Melleas. And some of those file names, so we're talking about electronic images in that case as well, just as there were in this case. And some of the file names in that case were explicit, just like the file names in this case. And this Court held that you can't force the government to stipulate that away, and that it was not an abuse of discretion to introduce that evidence. Similar defense, I should say, that some other person was the one in the household downloading the images and putting them on these CDs. So it's the same case, and no court has truly extended Old Chief. This Court should not. The principle of Old Chief, again, the bedrock principle from which they carved out this exception, is that the government has the ability to prove its case how it wants. I do want to note, since it was mentioned, the District Court in this case also gave a limiting instruction about the images before the images were first published to the jury. And that's the last, actually, comparison I'll make to Melleas, is that we actually only published around 10 images to the jury in this case. In Melleas it was 114. We only admitted 30 to 35 images in this case, and in Melleas it was 1,600. This Court approved the Court's decision not to force the stipulation, and that case should do the same here. I'll touch on the issue of the childhood illness evidence. A couple of things I want to say about that. I guess the theory, if I understood, to respond to your line of questioning, Judge Griffin, the theory at trial was that, as I understood the defense's theory, was not that they were challenging the admissibility of the confession, but it was more what weight the jury should put on it. District Court had obviously ruled pre-trial that it could all come in. It was not coerced. There was no Fourth Amendment or constitutional violation. So they're trying to argue, well, you can't really rely on that confession that's now in evidence because he was in a daze or he was drowsy. It's important to note the Court did admit evidence that he was in a daze, that he was drowsy. There was evidence that he took this Benadryl and melatonin and did it on a regular basis and did it the night before this encounter. That all came into evidence. It was when Ms. Lux said something about childhood illness that the objection was made, and then there was this proffer outside the presence of the jury. And I do want to note that the information cited in the briefs on the other side in this case about this childhood illnesses and how it related to his ability to think through things at the time of this encounter, they're actually citing to the PSR and the suppression hearing transcript. The proffer that was made at trial, which prompted the ruling that is now under review by this Court, it was fairly limited. And it was a very attenuated presentation. There was certainly no medical diagnosis given. It was a very attenuated connection between chemotherapy over 10 years before that led to some sort of pain in knees and ankles that led to sleeping problems that led to him taking Benadryl. And just a really, we would say, flimsy basis on which to admit this evidence. It was not relevant. District courts seemed to think there was some sort of marginal relevance. In our view, it wasn't even relevant for the reasons I just explained. There was no medical diagnosis. But even if it were relevant, we're talking about a potential prejudice and risk of jury confusion that was quite high. There's just no abuse of discretion that can be shown in that ruling. If there are no questions on the other issues, we'll rest on our briefs. Thank you. Thank you, Your Honors. My opponent brought up the fact that there was a limiting instruction in this case. The review does not show that. Unlike the Marino-Balderrama case, there was no instruction to cure the jury or to sanitize the jury. Did the defense ask for one? No, they did not. They tried to keep the stipulation out. And I'll point the court to pages 1990 and 2043 of the record, which are the page ID numbers in which the images were shown. And there is no limiting instruction. So the Marino-Balderrama case is the only published opinion that we can find that is really dispositive on this issue. And it sets forth the standards, and it applies, Old Chief, specific to this context. You just told us the case was one where it wasn't clear that the defendant had seen the movies. The issue of Sienta was a question. That was the issue before. Doesn't that change the Rule 403 dynamic? If anything, it helps us. In that case, Marino-Balderrama was saying, I didn't know that these images were child pornography. It's my understanding that the mens rea was the specific issue. I thought the question was it wasn't clear he even saw the movies that the government wanted to put in front of the jury. That's what the AUSA just said. I'm not sure if it's whether he saw the specific movies or whether he was transporting them and he didn't know what was on the films. Oh, that would mean he didn't see them. That's the point. So wouldn't that affect, it seems, a really serious qualifier when it comes to what that case stands for. But in a case like that, if he hadn't seen them, in our case, the question... Why would you let the jury see them if he hadn't seen them? That would be a matter for him and his counsel. All I know is that in our case, the probative value is the same, which is that it wasn't being contested. And if anything, because our client was aware, at least the allegations are that our client was aware what the films actually were, it reduces the probative value and only increases the prejudicial nature. So in fact, compared to that, our 403 balancing is even more great and more in our favor. And this case is the one case that really is a published opinion throughout this country that really goes through this analysis. And I ask the court to follow that. If there are no other questions, I will rest. Thank you. Thank you. Case is submitted. Once the table is clear, you may call the next case.